UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KEVIN J. VAZQUEZ

                                **Civ. No.**

                Plaintiff,              **COMPLAINT**

     -against-                      (**Jury Trial Demanded**)

SUNPOWER CORPORATION and KULBIR
SINGH individually

                  Defendants.
-------------------------------------------------------------X

       Plaintiff, KEVIN VAZQUEZ ("Plaintiff" or "Vazquez"), by and through his attorneys, L & D LAW P.C., complaining of Defendants, jointly and severally, herein respectfully shows to this Court and alleges the following:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action, involves federal questions, because the causes of action asserted herein arise in part under the American with Disabilities Act ("ADA") and Title VII of the 1964 Civil Rights Act. This Court has jurisdiction over the related state law claims herein asserted pursuant to 28 U.S.C. §1367, Gibb, 38 U.S. 715 (1966), and the laws of the State and City of New York, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against, and retaliated against by Plaintiff's former employer on the basis of disability, race, national origin discrimination in conjunction with unlawful termination and retaliation in accordance with the applicable principles of pendant jurisdiction.

2.     Plaintiff further complains pursuant to the laws of the State of New York, seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated

against, and conductively and constructively discharged by Plaintiff's former employer on the basis of disability, race, national origin, retaliation and unlawful termination.

3. Venue properly lies in the Eastern District in which a substantial part of the events or omissions giving rise to the claim occurred, or substantial part of property that is subject of the action is situated in accordance with 28 U.S. Code §1391 (b)(2)

## JURY DEMAND

4. Plaintiff hereby demands a trial by jury on all issues properly triable.

## PARTIES

5. Plaintiff Kevin J. Vazquez (hereinafter referred to as "Vazquez" or "Plaintiff") is seeking damages to redress the injuries Plaintiff has suffered because of being discriminated against on the basis of disability discrimination, race discrimination, national discrimination, retaliation and unlawful termination.

6. Defendant SunPower Corporation (hereinafter referred to as "SunPower" or "Defendant") is a foreign based company which sells and installs solar panels throughout New York and the entire United States. SunPower is headquartered in California but owns and operates a business establishment in New York.

7. At all times material, Kulbir Singh (hereinafter referred to as "Singh") was and is an employee with Defendant SunPower and holds the position of Supervisor.

8. At all times material, Singh had supervisory authority over Plaintiff regarding his employment, which included, but was not limited to the power to hire and fire the Plaintiff along with other tangible employment actions.

9. At all times material Nick Glogowski (hereinafter referred to as "Glogowski") was and is an employee with Defendant SunPower and held the position of Manager.

10. At all times material Glogowski had supervisory authority over Plaintiff regarding his employment, which included, but was not limited to the power to hire and fire the Plaintiff along with other tangible employment actions.

11.  Plaintiff is a Hispanic male of Mexican descent and resides in the State of New York, County of Queens.

12.  Plaintiff has a "cleft lip" which forces the Plaintiffto speak with a lisp. As a result of the cleft lip, Plaintiff will be forced to undergo a jaw placement surgery.

## STATEMENT OF FACTS

13.  On or about October 13, 2020, Plaintiff started working with SunPower through a different company; Progressive.

14.  On or about December 23, 2020, Defendant SunPower officially hired the Plaintiff as an **"Installer 1"** at their New York location, 400 Executive Blvd Suite 137, Elmsford, NY 10523.

15.  When Plaintiff was hired, Plaintiff was excited to be working and growing with such a major company.

16.  Plaintiff's hourly rate began at $25 dollars an hour and he was promised a raise every six months by Defendant's Regional Manager Elbin Collodo and by Defendant's Supervisor Joshua Arce.

17. Plaintiff was an exemplary employee who frequently asked for advice from Defendant's supervisors Elbin and Joshua on how to excel with the company.

18.  Defendant's Regional Manager Elbin Collodo and Defendant's Supervisor Joshua Arce have always treated the Plaintiff fairly.

19.  In fact, in less than two months after being hired, Plaintiff was consistently praised for a job well done and was quickly promoted to the position of **"Operation Maintenance Tech"** under the supervision of Defendant's Supervisors, Joshua Arce and Elbin Collodo.

20.  Along with the promotion, the Plaintiff was given a pay raise of $3 an hour.

21.  The promotion and raise boosted the Plaintiff's enthusiasm and appreciation for working at SunPower.

22. In or around January of 2021, soon after Plaintiff's promotion, Defendant's Supervisor Joshua Arce was offered a new job position and left the company.

23. After Defendant's supervisor Arce's cessation from SunPower, Defendant's employees had no direct supervisor for about a month. Eventually, Defendant's Supervisor Singh was put in as a temporary supervisor for the Defendants.

24. Soon thereafter, Defendant's Manager Elbin Collodo announced that he would also be leaving Defendant SunPower.

25. Collado's upcoming cessation from SunPower prompted the Plaintiff to apply for Elbin Collodo's position.

26. In or around March 2021, Plaintiff applied for the soon-to-be vacant position of Elbin Collodo on the company website: www.SunPower.com.

27. Plaintiff informed Defendant's Manager Collodo that he had applied for Collodo's position while Defendant's Supervisor Kulbir Singh was in the same room.

28. When Defendant's Supervisor Kulbir Singh heard this, he scowled at the Plaintiff and had a petulant expression on his face.

29. Soon thereafter, Plaintiff spoke with Defendant's Manager Elbin Collodo for another raise and a better position.

30. In or around April 2021, six months after having been hired, Plaintiff was promoted again by Defendant's Manager Collodo (prior to his departure) to the position of **"Senior Technician"** and awarded another raise of an additional $1.50 an hour.

31. Upon Manager Collodo's departure, Defendant's Supervisors Singh and Glogowski were assigned as Temporary Warehouse Supervisors until further notice.

32. In or around the end of April 2021, Defendant's Supervisor Kulbir Singh was promoted to a permanent supervisory position with Defendants.

33. Unfortunately for the Plaintiff, Defendant's Supervisor Singh however did not believe in equal treatment for Defendant's employees.

34. In fact, from the moment that Defendant's Supervisor Singh became a supervisor, Defendant's Supervisor Singh constantly ridiculed and discriminated against the Plaintiff because of Plaintiff's Cleft lip and Mexican national origin.

35. Defendant's Supervisor Singh would ridicule the Plaintiff's accent and suggested he improve it. Plaintiff is Hispanic American of Mexican origin and was discriminated against by Singh due to his nationality.

36. During Plaintiff's employment with Defendant, Defendant's Supervisor Singh ridiculed Plaintiff on different occasions due to his Cleft lip, actively discriminating his disability as the Plaintiff needs a jaw placement. Singh would have the Plaintiff repeat himself numerous times, toying with him and his disability. Specifically, Defendant's Supervisor Singh would imitate the Plaintiff and mumble similar tones in response to whatever the Plaintiff would say to Singh

37. Plaintiff was shocked by Singh's statements and advised Singh that he did not find the ridicule to funny. Rather, Plaintiff found Singh's statements to be wildly inappropriate, especially since it referred to an immutable characteristic of the Plaintiff.

38. In addition, throughout Plaintiff's employment with the Defendant, Defendant's Supervisor Singh would offer Plaintiff prescription drugs such as Adderall, while simultaneously berating the Plaintiff, telling Plaintiff that drugs would improve his speech and fluency.

39. Plaintiff was already promoted twice thanks to his skills on the job prior to Singh signing on as Supervisor, but now found himself as the target of discrimination.

40. Insinuating that Plaintiff needed drugs to perform was in and of itself hurtful and offensive to the Plaintiff.

41. Furthermore, after Defendant's Supervisor Singh became a supervisor, he began denying overtime to the Plaintiff and refused to pay Plaintiff for the overtime hours Plaintiff worked.

42.  Defendant's Supervisor Singh advised the Plaintiff that the Defendant was no longer giving over time, so whenever Plaintiff was forced to work longer hours, Defendant's Supervisor Singh would not pay Plaintiff for it.

43.  In or around the middle of June 2021, as Plaintiff was performing his work-related duties, Defendant's Supervisor Kulbir Singh came rushing towards the Plaintiff with his fists clenched, his face reddened and with a threatening and violent physical stance; looking as though he was ready to physically fight the Plaintiff. Defendant's Supervisor Singh then proceeded to assault the Plaintiff by getting in front of Plaintiff's face while moving his hands in an aggressive manner, appearing ready to hit the Plaintiff, accusing the Plaintiff of having loaded wires on the back of his truck.

44.  Plaintiff while in shock, immediately denied ever touching any wires and informed Defendant's Supervisor Kulbir Singh that he had no idea what he was talking about.

45.  Defendant's Supervisor Singh kept insisting that the Plaintiff put the wires there, and began threatening the Plaintiff, stating "**If you put them there, you're going to see what will happen to you".**

46. Plaintiff was dismayed by Defendant's Supervisor Singh's aggressive and unprofessional behavior.

47.  Again, Plaintiff replied that he had no idea what Singh was talking about and asked Singh to physically show him.

48.  As the Plaintiff and Defendant's Supervisor Singh were walking towards Singh's truck, Singh turned to the Plaintiff and stated that he remembered how the wires had gotten there.

49.  Plaintiff was appalled by the altercation and fabrication of lies but decided to remain professional and walk away.

50.     After Plaintiff regained his composure, he decided to once again ask Singh about the situation.

51.     When the Plaintiff approached Defendant's Supervisor Singh, Singh was carrying a particularly large drill bit which the company used to puncture holes into cement.

52.     When Plaintiff asked Singh about why he thought it was specifically the Plaintiff that had loaded those wires into Defendant's Supervisor Singh truck, he immediately swung the drill bit at the Plaintiff menacingly, assaulting the Plaintiff.

53.     Plaintiff immediately backed up and was against left in shock by Singh's unprofessional and unlawful behavior.

54. As Defendant's Supervisor Singh turned away from the Plaintiff, he decided to ridicule the Plaintiff and stated point blank: **"Yo, the Bronx is full of minorities!"**

55. Plaintiff asked him what he meant by statement and what would prompt such a discriminatory remark, but Defendant's Supervisor Singh left the area without responding.

56.     Soon after Singh's derogatory statements and unlawful actions, Plaintiff's relationship with Defendants Supervisor Singh deteriorated past the point of no return.

57. Specifically, Plaintiff would approach Defendant's Supervisor Singh with questions concerning his duties and Defendant's Supervisor Singh would refuse to clarify and/or help the Plaintiff in any way, even though it was his responsibility as Plaintiff's supervisor.

58. In fact, Defendant's Supervisor Singh argued with the Plaintiff every time the Plaintiff would ask for his help or ask for any information regarding his daily work-related duties.

59. In fact, Defendant's Supervisor Singh would lash out at the Plaintiff every time the Plaintiff would approach him for advice on how to perform his duties. Defendant's Supervisor Singh would respond aggressively by asking the Plaintiff **"What do you want?"** and then refuse to respond to the Plaintiff; or berate Plaintiff for even asking questions.

60. Defendant's Supervisor Singh actively discriminated and retaliated against Plaintiff, leading the Plaintiff to having to figure things out by himself as well as to complete tasks without help from his direct supervisor, even in instances when such help from

Defendant's Supervisor Singh was essential. This had never happened to the Plaintiff under the supervision of the Defendant's Supervisors, Collodo or Arce.

61.     For example, overtime had been a normal and routine part of Plaintiff's work life, having been called regularly to work overtime by his previous Supervisors Collodo and Arce. However, this came to an end under the supervision of Defendant's Supervisors Singh and Glogowski, who would refuse his continuous requests to be allotted overtime by the company, despite providing similarly situated employees with overtime.

62.     Defendant's Supervisor Singh, actively discriminated and retaliated against Plaintiff by denying overtime work to the Plaintiff.

63.     In fact, Plaintiff filed several protected complaints with Defendant's Human Resources ("HR"), hoping that they could address the issue.

64.     In or around the end of June and beginning of July, due to numerous complaints set forth by Plaintiff, the Defendants assigned HR Manager Lisa Doherty to assist the Plaintiff with finding a solution.

65.     Upon information and belief, Defendants conducted a faulty investigation into Singhs' discriminatory and unlawful behavior.

66. Defendant's HR Manager Lisa Doherty claimed no evidence was found against Defendant's Supervisor Singh, however Defendant's HR Manager Lisa Doherty failed to produce an official report and never even called Plaintiff for an interview or to respond to any questions regarding the numerous unlawful incidents.

67.     Defendants discriminated and failed to investigate and engage in an interactive process.

68.     On top of complaining to Defendant's HR representatives, Plaintiff also complained to Defendant's Manager Glogowski on numerous occasions that he was being discriminated against by Defendant's Supervisor Singh. Yet, no preventive measures were taken by Defendants.

69. Defendant's Supervisor Singh and Defendant's Manager Glogowski immediately began a retaliatory campaign against the Plaintiff which included but was not limited to fabricated disciplinary measures.

70. For example, in or around August of 2021, Plaintiff informed Defendant's supervisor Singh in advance that he would arrive late to work.

71. Upon arrival and completion of his duties, Defendant's Supervisor Singh informed the Plaintiff that he would receive a disciplinary write-up.

72. When the Plaintiff asked why he was receiving a write-up despite following company policy, Defendant's Supervisor Singh advised Plaintiff that the write-up was in fact due to his partner, Gabriel, for not showing up for work that day.

73. Plaintiff was baffled that Singh would write him up for the tardiness of another employee and thus decided to challenge the disciplinary action.

74. Plaintiff informed Defendant's Supervisor Singh that it wasn't his duty to supervise the attendance of his partner/co-worker.

75. Although there wasn't any wrongdoing or infraction of company policies by the Plaintiff, Singh actively retaliated against him and nonetheless wrote up the Plaintiff.

76. Defendant's Supervisor Singh retaliated against the Plaintiff by writing a complaint against the Plaintiff because Plaintiff's partner was late. Plaintiff argued that he shouldn't get a write up on account of his partner/co-worker not showing up. However, Singh ignored Plaintiff's pleas.

77. Plaintiff would continue to complain to HR on a regular basis about how Defendants were discriminating, retaliating, and mistreating him.

78. In or around August 2021, Plaintiff's co-worker, Wilson, approached the Plaintiff and asked him if he was going to take up any overtime during the weekend.

79.     The Plaintiff stated that he couldn't because Defendant's Supervisors Singh and Glogowski told the Plaintiff that there was no overtime, and that Plaintiff was not getting paid for the overtime hours he had done in the past.

80.     Plaintiff's co-worker Wilson then informed the Plaintiff that a companywide email was sent by Defendant's Supervisors Singh asking employees to work overtime as was required by Defendant's Management.

81.     Upon information and belief, everyone other than Plaintiff had been offered overtime through email by Defendant's Supervisor Singh.

82.     Defendant's Supervisor Singh singled Plaintiff and left him out of all overtime emails and treated the Plaintiff disparately by discriminating against the Plaintiff based on his nationality, race, and disability.

83. In or around the end of August and beginning of September 2021, Plaintiff again complained to Defendant's HR Sr. Manager Lisa Doherty about Defendants Supervisor Singh's discriminatory and retaliatory behavior which was now resulting in the disparate treatment of the Plaintiff.

84.     Furthermore, during the months of August, September, October and November, Plaintiff, and his coworker at the time, Gabriel Coffil, complained to Defendant's Supervisor Singh that the engine light in Plaintiff's truck was on, and that the truck needed service.

85.     Plaintiff asked Defendant's Supervisor Singh if he could approve the use of a spare truck which had been sitting in the warehouse, until their truck could be fixed.

86.     Defendant's Supervisor Singh refused the Plaintiff's request and instructed Plaintiff to use the faulty truck, despite Singh's full awareness that the truck was in disrepair.

87.    Soon thereafter, on or about November 2, 2021, on account of Defendant's retaliatory, deliberately indifferent, and negligent behavior, Plaintiff and his co-worker were involved in a car accident.

88.    Plaintiff immediately informed Defendant's Manager Glogowski that the breaks had failed and that the seat belt had failed to lock, which was the direct and proximate cause of physical bodily injury to the Plaintiff.

89.    Astoundingly, Defendant's Manager Glogowski did not believe the Plaintiff and asked for a police report.

90.    Defendants left the Plaintiff to his own demise, as he was now in both emotional and physical pain due to injuries sustained because of Defendant's unlawful behavior.

91.    Plaintiff informed Defendant's HR representatives Amanda Lee and Lisa Doherty about the injuries he had sustained and requested a reasonable accommodation.

92.    Instead of providing any accommodation or even taking the time to engage in an interactive discussion, the Defendants terminated Plaintiff's employment on November 10, 2021, in direct temporal proximity to Plaintiff's request for a reasonable accommodation and in temporal proximity to Plaintiff's complaints.

93.    Specifically, Defendants' Manager Singh unlawfully terminated the Plaintiff's employment via email.

94.    The litany of discriminatory, retaliatory, hostile, and negligent acts of Defendants left the Plaintiff devastated and in severe emotional distress.

95.    Defendants failed to take any action to remedy the ongoing pattern of unlawful behavior which ended with Plaintiff's unlawful termination.

96.    As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendants.

97.    The above is just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

### AS A FIRST CAUSE OF ACTION FOR
### DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

98.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

99.     The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful

discriminatory practice: "(a) For an employer or an employee or agent thereof, because of

the actual or perceived age, race, creed, color, national origin, gender, disability, marital status,

sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ

or to bar or to discharge from employment such person or to discriminate against such person

in compensation or in terms, conditions or privileges of employment."

100.    Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining

discriminatory working conditions, and otherwise discriminating against the Plaintiff as set

forth herein.

### AS A SECOND CAUSE OF ACTION FOR
### DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

101.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

102.    The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be

unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate

against any person because such person has opposed any practices forbidden under this

chapter..."

103.    Each of the Defendants engaged in an unlawful discriminatory practice in violation

of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the

Plaintiff because of Plaintiffs' opposition to the unlawful employment practices of Plaintiffs'

employer.

**AS A THIRD CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(As Against Individual Defendants)**

104.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

105.    New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

106.    Defendants violated the section cited herein as set forth.

**AS A FOURTH CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(As Against Individual Defendants)**

107.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

108.    The New York City Administrative Code Title 8, §8-107(6)  provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

109.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding,  abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

**AS A FIFTH CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Not Against Individual Defendants)**

110.    Plaintiff repeats, reiterates and realleges each and every allegation made in the

above paragraphs of this Complaint as if more fully set forth herein at length.

111.    New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent, or independent contractor.

> a.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

> b.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

>> (1) the employee or agent exercised managerial or supervisory responsibility; or

>> (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an

>> employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

>> (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

112.    Defendants violated the section cited herein as set forth.

**AS A SIXTH CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER STATE LAW**
**(Not Against Individual Defendants)**

113.    Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such

individual in compensation or in terms, conditions or privileges of employment."

114.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

115.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A SEVENTH CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER STATE LAW**
**(As Against Individual Defendants)**

116.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

117.    New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

>    "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

118.    Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**
**(As Against Individual Defendants)**

119.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

120.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

>    "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

121.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiffs because of Plaintiffs'

opposition to the unlawful employment practices of Plaintiffs' employer.

## AS A NINTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE
## AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

122.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

123.    Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

124.    SEC. 12112. [Section 102] specifically states

> "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

125.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
### (not against individual Defendants)

126.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

127.    SEC. 12203. [Section 503] states,

> "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

128.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

129. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

130. Title VII states in relevant part as follows:

    a. Employer practices:

    b. It shall be an unlawful employment practice for an employer:

        i. to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

131. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and national origin.

132. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein on account of Plaintiff's race and national origin.

## AS A TWELFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

133. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

134. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

    c. "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted

or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

135. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

136. Defendants violated the above and Plaintiff suffered numerous damages as a result.


**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil rights;
(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;
(c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards to the extent allowable by law;
(d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;
(d) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable laws; and
(e) such other and further relief as appears just and proper.


Dated: New York, New York
      January 18, 2023



**L & D LAW P.C.**

_____/s/_____
Paul Liggieri, Esq.
11 Broadway, Suite 615
New York, NY 10004
(212) 374-9786
*Attorneys for Plaintiff*